REED *v.* DONIPHAN LUMBER COMPANY.

Opinion delivered July 12, 1909.

LEGAL ADVERTISEMENTS—PUBLISHER'S FEE.—In the absence of any stipulation to the contrary, a publisher of a legal notice is entitled to charge the maximum rate fixed by Kirby's Digest, § 4921.

Appeal from Cleburne Chancery Court; *George T. Humphries,* Chancellor; reversed.

STATEMENT BY THE COURT.

The Doniphan Lumber Company brought suit in the Cleburne Chancery Court to quiet title to certain lands in said county, and employed Howard Reed, editor and publisher of *The Jacksonian,* to publish two legal notices in connection therewith. On December 17, 1907, he furnished its attorneys, at their request, proofs of publication without first receiving his pay for

said services. On October 30, 1908, the Doniphan Lumber Company filed its motion in said court, alleging that Howard Reed had charged an exorbitant price for said publication, and moved the court to tax and liquidate the amount which should be paid for said services.

To this motion appellant filed his response to the effect that in August, 1907, appellee employed him to publish the notices in question for seven weeks; that they amounted to 2,870 lines of nonpareil type, or 287 squares of 268 ems each; that his charge for said publication was $1,148 or $1 per square for first insertion and fifty cents per square for each subsequent insertion; that on the 17th day of December, 1907, he delivered proofs of publication to appellee's attorney, informing said attorney that his bill was $1,148 and praying the court to allow him for said publications the sum of $1,148, with interest at 6 per cent. per annum from December 17, 1907.

The evidence on behalf of appellee tended to show that its agent employed appellant to print two notices for publication; that at the time appellee delivered the notices to appellant for publication nothing was said about what the charges would be. The agent did not know what appellant had charged appellee for printing former notices, and did not ask what the charges would be for printing the two notices for which the charge in suit was made. One witness who had been in the newspaper business since 1875 testified: "that $500 would be a big price for publishing the notices; that if he had the opportunity to do such a job $500 would be his bid." But this witness further testified that $1,148 would be the legal rate for publishing the notices referred to. He further testified that the usual price for publishing reading notices was five cents per line. Another witness for appellee, who had been in the newspaper business since 1876, testified that $355 would be a liberal price for publishing the notices in question. His bid would not have exceeded that sum where he made the contract before the work was done. It was not his custom to charge the maximum rates for legal advertisements, which for the notices in question would have been $1,148, the sum appellee charged. He charged five cents a line for reading matter known as pay locals. On the other hand, four witnesses, who were newspaper men of long experience,

testified that they would have charged the sum of $1,148 for such notices; that such was their regular or fixed price to their patrons for such notices. These witnesses show that, unless a contract is made at a certain price in advance by bid or otherwise, the usual price is the legal rate, which makes the amount charged by appellant. The evidence shows that for ordinary reading matter most publishers charge about one-third more than the maximum price fixed by law for legal notices.

The appellant testified in part as follows: "Shortly after the first publication, I informed W. L. Thompson, who was the attorney for the Doniphan Lumber Company, that the bill would amount to $1,208, but I made a mistake in my calculation, and afterwards informed him that it was $1,148. At neither of these conversations did he object to the price charged. During the December term of the chancery court, 1907, W. L. Thompson prepared a special affidavit for proofs of publication, to which I attached copies of said notices and made proof of publication of same. I delivered these proofs of publication to W. L. Thompson, and he received them, and at that time I told him my bill was $1,148, to which price he made no objections at the time, but stated to me that the company had made no provisions for paying the same, and asked me if I would let him have the proofs without payment. I told him that I did not ordinarily deliver proofs of publication without receiving pay for same, but as the company had several thousand acres of land in the county, I considered them good for the amount, and gave him the proofs of publication, and when he received them he well knew the amount of my charge. Ever since I have owned and published *The Jacksonian,* I have charged the same rate for publishing legal notices that I charged the Doniphan Lumber Company, with one or two exceptions, and then there was a special agreement for a less price. In October, 1906, I published two notices for the Doniphan Lumber Company on the patent side of my paper, for which I charged the same rate that I charged in the above mentioned notices. These two notices amounted to $186, which the Doniphan Lumber Company paid. In May, 1906, I published three notices for the Doniphan Lumber Company under a previous agreement of 50 per cent. of full legal rate, or the rates charged for the notices above mentioned. The notices

consisted of two large notices and one small one, and by our agreement the Doniphan Lumber Company took their copy to the newspaper house in St. Louis which was furnishing me my patent sheet, had it printed by that company on the patent sheet, proof read the copy of the same, and relieved me from all liability of error that might occur in the publication. These notices amounted, I now remember, to $376. In order to have sufficient room for the notices in question, it became necessary for me to enlarge my paper from a 7-column 4-page paper to a 6-column 8-page paper, and, in order to insure the receipt of the paper in time, I went to Little Rock and procured another house to furnish the paper to me, superintending the setting of the type, and proof read the same myself, paying an additional expense for said paper of about $1.25 per week.

"The amount of money expended in accomplishing the publication referred to, in addition to what it would have cost to publish a like paper if these publications were not inserted, was less than $100. I would not have enlarged my paper at the time I did had it not been for these notices. At the time I delivered the notices to Mr. Thompson, I knew he was attorney for the Doniphan Lumber Company, and had previously delivered him notices of like character for said company, which were not paid for at the time of delivery, for which I had charged the same rate of publication that I did for these notices, which were afterwards paid for by the Doniphan Lumber Company. I would not have delivered the proofs of publication to Mr. Thompson had I supposed that my bill for publishing the same would have been questioned, or that I would have had to wait any considerable length of time for my pay. The price I charged for this work is less than my regular price charged my regular customers for the same amount of matter set in the regular reading type of my paper and published for the length of time these notices were published. I set the reading matter of my paper in 10-point type, or what is commonly known as long primer, and, had this matter been set in 10-point type as I set my ordinary paid advertisements, it would have made 4,476 lines, for which I would have charged any of my patrons 5 cents per line for each insertion, which would have amounted to $223.80 per week, or $1,566.60 for seven weeks."

The court decreed that appellant, Howard Reed, have and recover from Doniphan Lumber Company the sum of $750 with interest on said amount from December 17, 1907, at the rate of 6 per cent. until paid.

To which ruling and decree of the court the respondent, Howard Reed, excepted and prayed an appeal to this court.

*George W. Reed,* for appellant.

The construction of the statute involved in this case is one of first impression in this court. Clearly, under it (Kirby's Dig., § 4921) appellant was entitled to receive the amount charged, and was limited to that amount as a maximum reasonable charge, in the judgment of the Legislature. Without such publication and proof thereof appellee's title could not have been confirmed. Kirby's Dig., § § 662, 664, 4924. When the publication was made at appellee's request, and proof thereof received without objection to the charge therefor, there was an implied agreement to pay for it at the maximum rate allowed by statute. Legislative construction justifies this assumption and construction of the above act. Compare Acts 1907, pp. 1256-1258; *Id.* 547; Kirby's Dig. § § 710-11; Acts 1909, No. 10. Kirby's Dig., § 4919, does not apply in *ex parte* proceedings. It contemplates just what is says, *i. e.,* that the party procuring the notice shall pay for it.

*S. Brundidge, Jr.,* for appellee.

Where no contract is claimed by either party, and the testimony shows that there was none, there can be no recovery except upon a *quantum meruit.* Appellant can recover only such sum as is reasonable under the testimony. 105 U. S. 1028; 72 Tenn. 494; 56 N. E. 655.

WOOD, J., (after stating the facts). Section 4919 of Kirby's Digest provides: "When any notice or advertisement relating to any cause, matter or thing in any court of record shall be required by law or the order of any court to be published, the same when duly published shall be paid for by the party at whose instance it was published, which payment, or so much thereof as is deemed reasonable, may be taxed as other costs otherwise allowed by the proper courts in the course of the proceedings to which such advertisement relates."

Section 4921 provides: "When any law, proclamation, advertisements, order or notice shall be published in any newspaper for the State or for any officer on account of the State, or for any county or for any officer on account of any county, or for any legal advertisement for any individual, there shall not be allowed for such publication a higher rate than one dollar per square of ten lines (two hundred and sixty-eight ems) of nonpareil type for the first insertion, and fifty cents per square for each subsequent insertion, fractional squares and parts of squares to be counted as whole squares."

Neither of the above sections prevents any individual at whose instance any legal notice is published from contracting with the publisher to publish such notice at any price they may agree upon. And, as between the individual and publisher, the contract would be binding upon them. The individual in a suit between him and the publisher would be liable for whatever amount he had contracted to pay for the publication. The provisions of the statute were not intended to limit the power of any private individual to pay any amount he might contract to pay for any legal publication that was made at his instance. Section 4919 clearly indicates that, as between the individual at whose instance the publication is made and the publisher, they are left to contract for any amount they may agree upon, which amount the individual having the publication made shall pay. But, after he shall have paid it and asks to have amount so paid by him taxed as other costs by the courts in the course of the proceedings to which such advertisement relates, then the court shall not allow for such publication a higher rate than that prescribed by section 4921, *supra,* which sum the lawmakers evidently deemed a reasonable charge for the character of work prescribed. For it will not be presumed that the Legislature fixed as a maximum charge an unreasonable amount. Taking the two sections together, we are of the opinion that section 4921 was a declaration by the Legislature of the sum that it deemed reasonable for the court to allow as costs wherever the party at whose instance the publication was made had paid that or a larger sum. In other words, under the statute, when fixing the sum paid for legal publication as costs, unless the sum so paid exceeded the amount authorized to be charged by section 4921, *supra,* it could not be held unreasonable.

Appellant has submitted without objection to having the amount claimed by him for publishing the notices taxed as costs in the chancery proceeding to confirm; otherwise the court would have had no jurisdiction. Treating the case as the parties have treated it as a motion to tax as part of the costs in the suit to confirm the claim of appellant against appellee, we are of the opinion that under the statute the court should have adjudged the cost of the publication of the notices at the sum claimed by him in his response to the motion, which sum was the amount authorized under the provisions of the statute *supra*.

But, if the statute authorizes the court to fix any amount it may deem reasonable under the amount prescribed by section 4921, as contended by the appellee, we are then of the opinion that the finding of the court as to what was a reasonable sum was against the clear preponderance of the evidence. For it was not unreasonable that appellant should charge for his services the regular and customary price charged and paid for such work. It would be unreasonable to expect or require appellant to receive less for his work than others engaged in similar business would have charged appellee for the same work under the same circumstances. Yet, according to the clear preponderance of the evidence, that is what the decree of the chancellor does. For, judging by the record, a great majority of the publishers would have charged the same as appellant.

In the absence of any express contract, appellees must be held to have impliedly agreed, when it requested appellant to do the work for it, that it would pay the regular and usual price. The evidence tends strongly to show that appellee knew from previous transactions with appellant what the price would be and made no objections to it. The decree is reversed and remanded with directions to enter a decree taxing the cost of the publication of the notices at the sum of $1,148, with interest on same at 6 per cent. from December 17, 1907.